

FILED
2006 Apr-27  AM 09:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GLOBAL INDEX ADVISORS, INC., | ] |
| Plaintiff(s), | ] |
| vs. | ] CV-05-CO-0322-S |
| MERCANTILE BANKSHARES CORP., et al., | ] |
| Defendant(s). | ] |

MEMORANDUM OF OPINION

This is an action in diversity in which the plaintiff, Global Index Advisors, Inc. ("GIA") alleges Defendants breached an oral joint venture agreement to manufacture and distribute certain financial products, and breached their fiduciary duty by failing to use good-faith efforts to advance the interests of the joint venture. The cause is presently before the court for consideration of motions for summary judgment filed by both parties. (Docs. 15, 17). For the reasons stated herein, the motions will be denied.[1]

---

[1] The plaintiff also filed a motion to supplement the record (Doc. 45.) The Court has reviewed the proffered materials and finds nothing therein would change the outcome of this summary judgment proceeding. Therefore, the motion to supplement will be denied.

I.      Standard of Review.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or

by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

II.   Statement of Facts.[2]

GIA developed the methodology and created the "Dow Jones U.S. Portfolio Index" ("Index") for Dow Jones & Company ("Dow Jones"). GIA also procured an exclusive license from Dow Jones to "build and distribute" "Dow Jones U.S. Portfolio Index Funds," ("Index Funds"), an investment product based on the Index.

---

[2]The facts set out in this opinion are gleaned from the parties' Joint Status Report, the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. See *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. See *Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), modified on other grounds, 30 F.3d 1347 (1994).

In the Spring of 2003, GIA began looking for help to create and distribute the Index Funds and approached several entities with large distribution capacities. GIA met with John Pileggi, President of Mercantile Capital Advisors, and Eric Rubin, Senior Vice President of Mercantile Safe Deposit & Trust Company[3] in July 2003, and solicited an association with Mercantile to build and distribute the Index Funds in mutual fund form.

On November 20, 2003, GIA, Mercantile, and Dow Jones entered into a Sublicense Agreement (the "Sublicense") that granted Mercantile an exclusive sublicense to use the intellectual property subject to the exclusive license between GIA and Dow Jones. Mercantile agreed to pay GIA a sublicense fee of 15 basis points monthly for one of the contemplated Index Funds, and 10 basis points monthly for each of four other contemplated Index Funds. GIA was obligated to pay Dow Jones a portion of the revenues received as a result of the exclusive license. The Sublicense ran for a term of seven years, subject to certain termination provisions. The Sublicense is the only written agreement the parties completed.

---

[3] Mercantile Capital Advisors is the wealth management arm of Mercantile Safe Deposit & Trust Company. Hereinafter, they are collectively called "Mercantile."

In January 2004, GIA forwarded a "Joint Development Agreement" to Mercantile which provided for a consulting fee to be paid to GIA for a period of six months beginning in October 2003, and a right of first negotiation to GIA for any equity transactions involving GIA. Mercantile never executed the Joint Development Agreement.

In the fall of 2003 GIA and Mercantile began work on completing the prospectus and information required by the SEC.  Mercantile paid GIA a consulting fee of $20,000 per month for six months, from October 2003 through March 2004.  GIA offered to Mercantile the right of first negotiation on a proposed equity transaction.  On January 28, 2004, Eric Rubin represented that Mercantile's target was to obtain $200 million in assets under management ("AUM") within the first year.  Mercantile provided $10 million in seed money for the Index Funds.  The SEC approved the Index Funds for public consumption on February 9, 2004, and the Index Funds "went live" or were made available to the public, on the same day.

On March 18, 2004, Mercantile terminated John Pileggi's employment. On March 31, 2004, Mercantile's Product Review Committee reviewed the viability of the Index Funds, and decided to "proceed aggressively with the

roll–out of the product and see where we are in 3 – 6 months."  In September 2004, Mercantile advised GIA that Mercantile was going to close the Index Funds.  In December 2004, Mercantile closed the Index Funds.  At termination, Mercantile had not put the Index Funds on its own 401(k) platform.

In this action, GIA complains Mercantile breached their joint venture agreement by failing to use commercially reasonable efforts to market and distribute the Index Funds, by failing to commit adequate resources to the endeavor, by failing to attempt to obtain $200 million in AUM within the first year as agreed, and by acting in a manner that deprived GIA of the right to receive benefits under the joint venture agreement.  GIA further claims Mercantile breached its fiduciary duty by failing to use good-faith efforts to advance the interests of the joint venture.

GIA contends it is entitled to summary judgment on its claim that the parties entered into an oral joint venture agreement.  Mercantile argues it is entitled to summary judgment because GIA cannot establish the existence of a joint venture agreement.  Alternatively, Mercantile argues that any joint venture agreement would violate the Statute of Frauds.

1.   The Existence of a Joint Venture Agreement.

Mercantile argues that GIA cannot show Mercantile and GIA were joint venturers because there is no evidence of a mutual intent to be joint venturers, GIA cannot show it had any measure of control over the alleged venture, and there is no evidence the parties agreed to share profits and losses of the venture.  See *Richbell Information Svcs, Inc. v. Jupiter Partners*, 765 N. Y. S. 2d 575, 585 (N.Y. App. Div. 2003)(listing elements of joint venture).  The plaintiff has responded by pointing to evidence which would support a finding that the parties entered into a joint venture, but does not establish the existence of a joint venture as a matter of law.

These questions of material fact preclude summary judgment for either party on this issue.

2.   The Statute of Frauds.

Relying on two cases in which federal courts were interpreting New York law through the exercise of diversity jurisdiction, Mercantile argues that the alleged joint venture agreement is void under New York's Statute of Frauds, N. Y. Gen. Ob. L. § 5–701(a)(1), because Plaintiff contends it was to exist for a term of seven years. Def. Ex. 6 at pp. 380–82, *Ebker v. Tan*

*Jay International, Ltd.*, 739 F.2d 812, 828 (2d Cir. 1984)(holding the New York statute of frauds rendered unenforceable an oral joint venture agreement containing a stated term of five years as found by the jury); *Rivkin v. Coleman*, 914 F. Supp. 76, 79 (S. D. N. Y. 1996).[4]

Although this Court is inclined to agree with the Second Circuit and with Mercantile's position, at least one New York court has declined to apply the statute of frauds to a joint venture agreement that exceeded one year. *Chalmers v. Eaton*, 419 N.Y.S.2d 217 (N.Y. App. Div. 1979)(rejecting argument that statute of frauds voided 17 year oral relationship). Moreover, Mercantile has not rebutted G.A.'s argument that its part performance took their agreement outside the statute. *See Ackerman v. Lands*, 493 N.Y.S.2d 59 (App. Div. 1985).

III. Conclusion.

For the reasons stated herein, the motion to supplement (Doc. 45) and the motions for summary judgment (Doc. 15, 17) will be denied. A separate order will be entered.

---

[4] GIA does not deny the contention that the alleged joint venture is for a term of seven years.

Done this 26th day of April 2006.

                                               *[signature]*
                                           L. SCOTT COOGLER
                                   UNITED STATES DISTRICT JUDGE
                                                   124153